UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LOUIS GALPERN and EVA GALPERN,

                Plaintiffs,                         **NOT FOR PUBLICATION**
                                                   **MEMORANDUM & ORDER**
-against-                                     10-CV-1952 (CBA) (JMA)

DE VOS & CO. PLLC, Attorneys and
Counselors and LLOYD DE VOS, Esq.

                    Defendants.
------------------------------------------------------------------x
**AMON, Chief United States District Judge.**

      This case arises out of a dispute over legal fees.  Plaintiffs Louis Galpern ("Galpern") and Eva Galpern (collectively the "Galperns" or "plaintiffs") bring claims based upon their contention that defendants Lloyd De Vos ("De Vos") and De Vos & Co. PLLC ("DVC" and collectively "defendants") over-billed plaintiffs and sought extra fees in violation of the terms of their retainer agreement with the Galperns. They also assert related causes of action based upon defendants' efforts to collect claimed unpaid legal fees.  Defendants move for summary judgment on plaintiffs' claims and defendants' counterclaims and to strike plaintiffs' jury demand. Plaintiffs move for summary judgment with respect to defendants' counterclaim and defendants' second, third, fourth, and seventh affirmative defenses.

## BACKGROUND AND PROCEDURAL HISTORY

      On February 21, 2009, DVC sent a retainer letter (the "Retainer Agreement") to the Galperns that contained the terms under which DVC was prepared to provide legal services to them.  (Pl. 56.1 Stmt. ¶ 1; Def. 56.1 Stmt. ¶ 1.)  In a letter dated February 21, 2009, which the parties refer to as the "Retainer Agreement," the defendants set out two potential fee arrangements. (De Vos Aff. ¶ 10; Am. Compl., Exhibit A.)  The first option was a fixed fee of $60,000.

(Id.) In the second option, defendants would proceed on a time and disbursement basis of $500.00 per hour for De Vos's time and $300.00 per hour for the time of Sherry Ellenzweig, an associate at DVC. (Id.) The fees in the second option were to be capped at $75,000.00 unless the matter was referred to the United States Department of Justice. (Id.) To accept the second option, plaintiffs had to submit a check to defendants for $15,000.00. (Id.) Both parties acknowledge that an agreement was reached pursuant to which DVC would perform legal services. (Pl. 56.1 Stmt. ¶ 2; Def. 56.1 Stmt. ¶ 2.) Louis Galpern states that he chose the second alternative and paid Lloyd De Vos $15,000.00. (Galpern Aff. ¶ 14.) Defendants provide no facts controverting that assertion.

According to Galpern, in February 2009, he received notice that UBS might be releasing information regarding his foreign bank accounts to the Internal Revenue Service (the "IRS"). (Galpern Aff. ¶ 4.) He states that he was aware from various newspaper articles that the IRS had an amnesty program with respect to foreign bank accounts, and he wanted to take advantage of the amnesty program. (Id. ¶ 5.) It is for that reason, he states, that he entered into the Retainer Agreement with defendants. (Id. ¶ 6.) He asserts that Lloyd De Vos explained to him that Amended Tax Returns and Foreign Bank Account Reports ("FBARs") would have to be filed and that they relied on defendants to comply with the requirements of the Voluntary Disclosure Program. (Id. ¶ 7.) Galpern states that Lloyd De Vos advised him that it was important that amended tax returns be filed as soon as possible and that the deadline for taking advantage of the Voluntary Disclosure Program was September 15, 2009. (Id. ¶ 8.) He attests that Lloyd De Vos advised him that all tax returns and FBARs had to be filed by that date and that it was imperative that the Galperns' tax returns be filed as rapidly as possible to prevent a criminal referral. (Id. ¶¶ 8-9.)

Between February 26, 2009 and October 14, 2009, Galpern states that he paid defendants a total of $56,000.00. (<u>Id.</u> ¶¶ 14, 20.) In conversations in August and September 2009, Galpern states that De Vos told him that the IRS had extended the filing due date to October 15, 2009. (<u>Id.</u> ¶ 37.) Galpern states that on October 14, 2009, he was advised that he could pick up the tax returns and FBARs for timely filing in order to comply with the Voluntary Disclosure Program. (<u>Id.</u> ¶ 42.) At a meeting at defendants' office on October 14, 2009, he states, defendants demanded payment of $112,000.00. (<u>Id.</u> ¶ 43.) Plaintiffs have submitted copies of defendants' invoices, which total $160,643.97 for the relevant time period, (Singer Aff., Exs. A-H.), and Galpern acknowledges that he received invoices totaling $168,937.46 in charges, which, less the $56,000.00 Galpern states that he had paid, would correspond to roughly $112,000.00 in unpaid charges at that time. (Galpern Aff. ¶ 56.) Galpern states that defendants refused to give him the amended tax returns and FBARs unless he agreed to pay the sum defendants claimed was owing. (<u>Id.</u> ¶ 43.) Galpern states that he left defendants' office at that time. (<u>Id.</u> ¶ 44.)

Galpern states that De Vos called him later that day and told him to return to defendants' office, which the Galperns did. (<u>Id.</u> ¶ 47.) Both parties acknowledge that at that meeting plaintiffs agreed to pay DVC an additional $50,000.00 in legal fees in settlement of all outstanding fees owed to DVC for services through that date. (Pl. 56.1 ¶ 3; Def. 56.1 ¶ 3.) Both Galpern and De Vos state that after that agreement was reached, defendants turned over the tax returns and FBARs to plaintiffs. (Galpern Aff. ¶ 54; De Vos Aff. ¶ 8.) Defendants performed additional work after October 14, 2009, and submitted an invoice for an additional $3,000.00. (Def 56.1 ¶ 6-7; Pl. 56.1 ¶ 6; Singer Aff., Ex. I.) Plaintiffs, however, have not paid defendants the $50,000.00 or the $3,000.00 invoiced for additional work. (Galpern Aff. ¶ 55; Def. 56.1 ¶ 5.)

Galpern states that on or about December 30, 2009, Lloyd De Vos filed a proceeding against him in Zurich, Switzerland, which resulted in the seizure of his bank account in Switzerland in the approximate amount of $50,000.00.  (Galpern Aff. ¶ 61.)  In that proceeding, Galpern contends, De Vos made a representation that Galpern was indebted to De Vos in an amount in excess of $50,000.00.  (Id. ¶ 62.)

Plaintiffs filed this action in New York State Supreme Court.  The action was removed on April 30, 2010.  On August 27, 2010, plaintiffs filed an amended complaint, alleging four counts. The first cause of action appears to be for breach of contract.  In the second cause of action, plaintiffs appear to allege that defendants breached their fiduciary duty by using information obtained from the plaintiffs to seize the plaintiffs' foreign bank account in an *in rem* proceeding in Switzerland.  The third cause of action alleges over-billing, and the fourth cause of action alleges that De Vos made fraudulent statements to the court in Switzerland.  Defendants now move for summary judgment on the complaint in full or, in the alternative, to strike plaintiffs' jury demand.  Plaintiffs cross-move for summary judgment on defendants' counterclaim and defendants' second, third, fourth and seventh affirmative defenses.

### STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).  The Court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court is required to view the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest on mere allegations or denials, but must instead set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) (speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact). No genuine issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

I.   *Summary Judgment as to the Amended Complaint*

Defendants Lloyd De Vos and De Vos & Co. move for summary judgment on each of the plaintiffs' causes of action.[1]

1.   *First Cause of Action*

Plaintiffs allege that on October 14, 2009 defendants breached their contract by refusing to turn over their work product unless plaintiffs paid fees in excess of the $75,000.00 cap specified in the Retainer Agreement. Defendants argue that they could not have breached that contract because the plaintiffs and defendants agreed on October 14 that plaintiff would pay $50,000.00 to settle all outstanding legal fees in exchange for defendants' work product. Plaintiffs counter that any agreement reached on October 14, 2009 was procured through duress and therefore unenforceable. Both parties acknowledge that plaintiffs agreed to the accord. Thus, the only question, as the claim is argued to this court, is whether the accord was procured by duress.

---

[1] Lloyd De Vos also asserts that all claims against him as an individual must be dismissed. The Court agrees. This issue is discussed *infra* Section II.3.

Under New York law, "[a] contract is voidable on the ground of duress when it is estab-
lished that the party making the claim was forced to agree to it by means of a wrongful threat
precluding the exercise of his free will." Austin Instrument v. Loral Corporation, 29 N.Y.2d
124, 130 (1971). In order to plead duress, the party must satisfy four elements: "(1) a threat; (2)
which was unlawfully made; (3) and caused involuntary acceptance of contract terms; (4) be-
cause the circumstances permitted no other alternative." Kamerman v. Steinberg, 891 F.2d 424,
431 (2d. Cir. 1989) (citing Gulf & W. Corp. v. Craftique Prod., Inc., 523 F. Supp. 603, 610
(S.D.N.Y. 1981)).

Defendants argue that plaintiffs cannot satisfy the second and fourth elements: that the
alleged threat was unlawfully made and that the circumstances permitted no other alternative.
Generally, "tak[ing] action which is legally permissible" does not constitute an unlawful threat.
Kamerman v. Steinberg, 891 F.2d 424, 432 (2d Cir. 1989) (citing Hammelburger v. Foursome
Inn Corp., 54 N.Y.2d 580, 593 n.4 (1981)). For example, an attorney threatening to stop repre-
senting a client until he is paid is typically lawful, provided the withdrawal would not cause
prejudice to the client. Ehrlich v. Tullo, 710 N.Y.S.2d 572, 573 (App. Div., 1st Dep't. 2000) (ex-
plaining an attorney's "'threats' to cease representing [the defendant, client, as attorney] unless
[the attorney's fees] were paid were not wrongful," but noting that the client "would not have
been prejudiced had her attorney actually withdrawn"); see also Duane Morris LLP v. Astor
Holdings Inc., 877 N.Y.S.2d 250, 252 (App. Div., 1st Dep't. 2009) (finding an attorney's threat
to cease representation of the client until paid was not unlawful). Where the attorney is demand-
ing excessive and unreasonable fees, however, such action may be deemed unlawful. See First
Nat'l Bank of Cincinnati v. Pepper, 547 F.2d 708, 714-15 (2d Cir. 1976) (finding attorney's ac-
tions in withholding documents until the plaintiffs agreed to pay fees was unlawful because the

amount attorney demanded was excessive and unreasonable).  The reasonableness of defendants'

demands is a contested issue, *see infra* Section I.3.

Even if a threatened action is considered "unlawful" for purposes of duress, the party

claiming duress must also show that they had no other alternative than to agree to the contract in

question.  This element "places a burden on the threatened party to show that the threatened

breach would result in irreparable harm."  Indus. Recycling Sys., Inc. v. Ahneman Assoc., P.C.,

892 F. Supp. 547, 550 (S.D.N.Y. 1995).  The party must show, for example, that there was no

other source of supply for the withheld items and that there were no available adequate remedies

at law, namely a breach of contract action. See e.g., Austin Instrument, Inc. v. Loral Corp., 29

N.Y.2d 124, 130-31 (1971); Sosnoff v. Carter, 568 N.Y.S.2d 43, 46 (App. Div., 1st Dep't. 1991);

U S West Fin. Servs., Inc. v. Tollman, 786 F. Supp. 333, 339-40 (S.D.N.Y. 1992); Universal Re-

insurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co., No. 95 Civ. 8436 (WHP), 1999 WL

771357, at *10 (S.D.N.Y. Sept. 29, 1999).

Defendants argue that plaintiffs cannot make a showing of duress because plaintiffs were

not required to submit the tax returns and FBARs in order to qualify for the Voluntary Disclosure

Program and, in any event, plaintiffs were not eligible.  Defendants submit three memoranda is-

sued by the Internal Revenue Service on March 23, 2009 that purportedly constitute the frame-

work of the Voluntary Disclosure Program (De Vos Aff., Ex. 3), as well as a set of Frequently

Asked Questions, or FAQs, about the Program, issued by the IRS on May 6, 2009 and updated

on June 24, 2009 (De Vos Aff., Ex. 4).  Defendants argue that these documents support their

contention that plaintiffs need not have submitted the tax returns and were not eligible for the

amnesty.  Louis Galpern, however, has submitted an affidavit in which he states defendants spe-

cifically advised him that he and his wife were eligible to participate in the IRS's Voluntary Dis-

closure Program and that "Amended Tax Returns and Foreign Bank Account Reports would have to be filed," that "the deadline for taking advantage of the Amnesty Program was September 15, 2009, and that all tax returns and Foreign Bank Account Reports (FBARS) had to be filed by then."  (Galpern Aff. ¶¶ 7-8.)  Galpern states that De Vos later advised him that the filing date for the Voluntary Disclosure Program had been extended to October 15, 2009.  (Galpern Aff. ¶ 37.)

Additionally, plaintiffs provide a letter from Lloyd De Vos to Louis Galpern in which De Vos writes, "It will be *necessary* as we go through this process of addressing this matter to prepare amended Federal and State tax returns." (Galpern Aff., Ex. A, at 3.) (emphasis added). The letter does not indicate the date by which the tax returns needed to be filed.  However, it does specify that "[t]here is time sensitivity in [preparing the amended tax returns and FBARs] because of our concern that your actions appear to be voluntary and that a criminal referral not be issued as a result of disclosures from the Swiss Federal Tax Administration to the Internal Revenue Service that took place last Wednesday, February 16, 2009, in Switzerland."  (Id.)  Thus, based on the statements allegedly made by De Vos, it would have been reasonable for Galpern to infer that the documents in question were required to be filed prior to the deadline for voluntary disclosure.

Although a claim of duress is evaluated under an objective standard, see Berman v. Parco, No. 96 Civ. 0375, 1996 WL 465749, at *8 (S.D.N.Y. Aug. 15, 1996); DuFort v. Aetna Life Ins. Co., 818 F. Supp. 578, 583 (S.D.N.Y.1993), a court will consider a party's objective choices based on the facts and circumstances as they were reasonably understood by the party at the time of the decision.  Thus, where a party to a contract "soundly and reasonably believed [he] faced irreparable harm, with no other feasible remedy than to" agree to a defendant's demand, it

could be sufficient to constitute duress. <u>First Nat'l Bank of Cincinnati v. Pepper</u>, 547 F.2d 708, 715 (citing <u>First Nat'l Bank of Cincinnati v. Pepper</u>, 454 F.2d 626 (2d Cir. 1972)).

Although the case is not cited by either party, the Second Circuit Court of Appeals considered similar circumstances in <u>First National Bank</u>, 547 F.2d at 715.  There, the Second Circuit considered the case of a lawyer, Pepper, who threatened to retain corporate documents unless certain fees were paid.  Pepper had helped arrange a deal with the prospective purchaser of a corporation.  Pepper, however, threatened that he would not turn over corporate papers and stock certificates that were required for the deal to close unless he was paid fees in the amount of $100,000.00.  <u>Id.</u> at 713.  The court found, first, that Pepper was entitled to the payment of some fees.  <u>Id.</u> at 713-14.  However, the court found that the claim for duress could proceed because the particular demand at issue was excessive.  <u>Id.</u> at 714-15.

The court next turned to the question of whether shareholders, who had agreed to a settlement with Pepper so as to consummate the sale, had "no reasonable alternative" to settling. <u>Id.</u> at 715.  The court found that the buyer might have temporarily delayed the closing, but that even under that circumstance, the shareholders had to be certain they could deliver in a timely fashion.  <u>Id.</u>  To deliver on the closing, Pepper's availability was essential.  <u>Id.</u>  However, Pepper's own representative stated that Pepper was about to leave on vacation, and that Pepper usually took a month or two off and traveled abroad.  <u>Id.</u>  Pepper later claimed that he in fact had no intention to engage in international travel during the relevant period.  <u>Id.</u> at 715.  The court found, however, that the shareholders were entitled to rely on the statements of Pepper's representative.  <u>Id.</u>  Thus the question was not whether Pepper would in fact have been available, but whether the shareholders could reasonably believe, based on the representations made, that Pepper may not be available.  <u>Id.</u>

Here, likewise, defendants argue that plaintiffs were in fact under no pressure to file the amended tax returns and FBARs, as they were not required to file the documents and, in any event, were not even eligible for the voluntary disclosure program.  But under the circumstances, the Galperns were entitled to rely on the representations of their attorney, who appears to have at least strongly implied that the documents must be filed and that the Galperns were required to do so by October 14, 2009, or else face potential financial and criminal liability.

Defendants also contest plaintiffs' characterization of the nature of their representation, arguing that Galpern's assertion that he entered into the Retainer Agreement with defendants "for the purpose of taking whatever steps were necessary to meet all the terms and conditions of the Amnesty Program" (Galpern Aff. ¶ 6.) is false.  Defendants argue that plaintiffs could not have hired them for their assistance in participating in the Voluntary Disclosure Program because the Voluntary Disclosure Program for UBS AG accountholders was not introduced until March 23, 2009.  However, the documents do indicate that defendants were hired to assist plaintiffs with some form of voluntary disclosure.  Indeed, a letter from Lloyd De Vos to Louis Galpern, dated February 23, 2009, before the Voluntary Disclosure Program was allegedly announced, discusses the possibility of negotiated settlement with the IRS and that it was important that the Galperns' actions "appear to be voluntary".  (See Galpern Aff., Ex. A, at 2-3.)

Moreover, defendants' invoices indicate that De Vos was in fact working on tasks related to voluntary disclosure.  The invoices state that on February 25, 2009, for example, the defendants made "multiple telephone calls with IRS to establish voluntary disclosure procedures." (Pl. Aff., Ex. A.)  Another invoice describes some of the defendants' activities on March 4, 2009 as follows: "E-mails to and from Urs [sic] regarding identification of documents turned over by UBS to IRS; Review Amnesty proposals." (Pl. Affirmation Exhibit B.)  On March 5, 2009, the

10

invoices list: "E-mail from and to Urs [sic] regarding confirmation of handover of files by UBS to IRS." (Id.)  Even if defendants were not hired for the express purpose of complying with the specific Voluntary Disclosure Program allegedly announced in March 2009, that does not negate the assertions made in Galpern's affidavit that Galpern had multiple conversations with De Vos subsequent to the announcement in which he alleges that he expressed concern that the returns were not ready on a timely basis, but was assured that the IRS had extended the filing due date for the Voluntary Disclosure Program to October 15, 2009 (Galpern Aff. ¶ 37), and that he was advised that on October 14, 2009 he could pick up the tax returns and FBARs for timely filing in order to comply with Program (Galpern Aff. ¶ 42).

Defendants next argue that any predicament plaintiffs found themselves in as a result of defendants' decision to withhold the tax returns and FBARs was the result of the plaintiffs' own conduct, and therefore cannot make out a claim of duress.  "Mere hard bargaining positions, if lawful, and the press of financial circumstances not caused by defendant, will not be deemed duress. The alleged duress must be proven to have been the result of defendant's conduct and not of plaintiff's own necessities."  U.S. West, 786 F. Supp. at 340.  However, this is not a case of mere hard bargaining.  Although it is true that plaintiffs were potentially subject to criminal prosecution because they allegedly evaded United States taxes, it was the defendants' conduct in withholding the tax returns and FBARs that caused the immediate crisis.

Finally, defendants argue in their reply brief that plaintiffs cannot maintain a claim of duress because plaintiffs in fact negotiated with defendants.  Galpern attests that he left defendants' office when first asked to pay more money and later came back to the office, at which point the parties agreed to a reduced fee demand of $50,000.00.  (Galpern Aff. ¶¶ 44, 47, 50.)  However, defendants have cited no case law standing for the proposition that a party subject to duress can-

not have conducted any negotiations.  Nor have defendants cited case law that suggests that there

can be no claim for duress where a party leaves a negotiation and subsequently returns.

Certainly, the fact that a party participates in negotiations can be evidence that their free

will was not overcome.  See, e.g., Duane Morris LLP v. Astor Holdings Inc., 61 A.D.3d 418, 877

N.Y.S.2d 250 (App. Div., 1st Dep't 2009) (finding client's free will was not overborn where cli-

ent admitted participating in significant negotiations with attorney over legal fees and was repre-

sented by independent counsel).  Courts have found, however, that parties that agree to a settle-

ment of disputed claims may be subject to duress.  See, e.g., First Nat'l Bank, 547 F.2d at 715.

Defendants have presented no evidence regarding the contents or timing of any such negotiations

except that the parties eventually agreed to a settlement sometime on the same day that the plain-

tiffs made their demand.  On the current record, the Court finds that there are disputed issues of

material fact and accordingly will not grant summary judgment.

Although the issue was not raised by the parties, the Court notes here that under the theo-

ry of duress, a contract is voidable, not void.  Universal, 1999 WL 771357, at *10 (citing Indus.

Recycling Sys., Inc. v. Ahneman Assoc., P.C., 892 F. Supp. 547, 550 (S.D.N.Y. 1995).  "It is

well-settled that 'one who would repudiate a contract procured by duress, must act promptly, or

will be deemed to have elected to affirm it.'"  Indus. Recycling Systems, 892 F. Supp. at 551

(quoting Fayard v. Henry Holt & Co., 726 F. Supp. 438, 447 (S.D.N.Y. 1989)).  The Court must

determine "whether the party claiming duress acted reasonably under the circumstances in assert-

ing the claim." U.S. West, 786 F. Supp. at 340.  "The burden on a party seeking to avoid contrac-

tual obligations on the grounds of economic duress 'increases proportionately with the delay in

initiating suit or otherwise repudiating the contract in question, since it is well established under

New York law that a party asserting duress must do so promptly.'"  VKK Corp. v. National

Football League, 244 F.3d 114, 123 (2d Cir. 2001) (quoting Int'l Halliwell Mines, Ltd. v. Cont'l Copper and Steel Indus., Inc., 544 F.2d 105, 108 (2d Cir. 1976)).

Here, no claim of duress was made until the amended complaint was filed in August 2010, a total of ten months after the alleged accord. In Universal Reinsurance, the court found that pleading duress nine months after the agreement was not prompt enough to render the agreement void.  Universal, 1999 WL 771357, at *10; see also DiRose v. PK Mgmt. Corp., 691 F.2d 628, 634 (2d Cir. 1982) (collecting cases in which delays ranging from six months to two years constituted forfeiture of duress claim).  Moreover, the Galperns acknowledge that after the alleged accord, they requested that defendants' perform additional work for them, work for which the defendants were not remunerated.  In a December 7, 2009 letter from Lloyd De Vos, submitted by the Galperns, De Vos states that he received a telephone call from the Galperns on November 20, 2009, and that they "promised that we would receive the $53,000 for past services referred to in our letter of November 14, 2009 by wire transfer no later than Tuesday, November 24, 2009."  As plaintiffs agreed to pay in November, not just the accord's amount but also the $3,000 for the services rendered in the month following the accord, plaintiffs delay in pleading duress may not be reasonable.

Because the parties have not briefed this issue, supplementary briefing is necessary as to whether the Galperns have acted promptly enough to repudiate the accord they claim was procured under duress.

   2.   *Second Cause of Action*

Plaintiffs' second cause of action alleges that defendants breached their fiduciary duty by using plaintiffs' confidential foreign bank account information to seize plaintiffs' assets.  Plaintiffs further allege that defendants breached their fiduciary duty by bringing a collection action

13

outside of New York. Defendants argue that summary judgment is proper because an attorney may use confidential information obtained during the representation in order to collect a fee and that jurisdiction for the collection action was not limited to New York.

To plead a breach of fiduciary duty, a plaintiff must allege that there was a breach of a duty owed to the plaintiffs and that the plaintiffs incurred an injury as a result of the breach. Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 865 N.Y.S. 2d 14 (App. Div., 1st Dep't. 2008) (citing Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood, 60 N.Y.2d 377, 590 (1992)).  New York courts recognize the fiduciary nature of the relationship between an attorney and his or her client. Ulico, 865 N.Y.S. 2d at 21 ("It is well-settled that the relationship of client and counsel is one of unique fiduciary reliance and that the relationship imposes on the attorney the duty to deal fairly, honestly and with undivided loyalty . . . including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients' interests over the lawyer's." (citations omitted)).

One fiduciary duty an attorney owes to his or her client centers upon maintaining the confidentiality of the information obtained during a representation. Under New York Rule of Professional Conduct 1.6, "a lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200 (2011). However, under Rule 1.6(b)(5)(ii), a lawyer may use the confidential information "to collect a fee."[2] Id.; see also Model Rules of Prof'l Conduct R. 1.6 (2006 ed.).

Courts have held that the duty of confidentiality may be waived in a collection action to the extent that it is "necessary to establish or collect [such fees]," and consequently such action does not constitute a breach of fiduciary duty. See Eckhaus v. Alfa-Laval, Inc., 764 F. Supp. 34,

---

[2] Plaintiffs assert that a portion of Rule 1.6 was repealed. That portion has no relevance to this case.

37 (S.D.N.Y. 1991) ("confidences or secrets necessary to establish or collect the lawyer's fee" may be revealed); see also Treasure Lake Assoc. v. Oppenheim, 165 F.3d 15, 1998 WL 7774477, at *2 (2d Cir. 1998) ("The defendant[] [attorneys] did not have a fiduciary duty to re-frain from suing [plaintiff] to recover legal fees after their representation of [plaintiff] had end-ed.").

With respect to plaintiffs' allegations regarding the limit on jurisdiction, plaintiffs argue:

the written Retainer Agreement never indicated that the Plaintiffs would use in-formation obtained during the attorney/client relationship with the Plaintiffs in breach of their fiduciary duty to institute an action in a foreign jurisdiction with respect to a New York Plaintiff retaining a New York attorney to perform services wholly within the State of New York.

(Pl. Mem 11.)  Plaintiffs assert that these actions constitute "a classic example of an attorney us-ing his superior knowledge of the law to the disadvantage of his client."  Plaintiffs rely on the following provision from the Retainer Agreement:

By asking us to perform legal services, you understand that we retain both a charging and a retaining lien under New York law on all matters and files in re-spect of which we have acted on your behalf for any sums due and owing to us. This lien shall attach to any of your money or property, including but not limited to all records or property in our possession. In the event of our termination or withdrawal, all unpaid fees and disbursement shall immediately become due.

(Am. Compl., Ex. A, at 3.)  The plain meaning of that clause, however, in no way limits the ju-risdiction in which defendants were permitted to pursue a collection action.

Although an attorney "must shoulder the burden of demonstrating that a fee contract is fair, reasonable, and fully known and understood by the client," Ween v. Dow, 822 N.Y.S.2d 257, 261 (App. Div., 1st Dep't. 2006) (citing Jacobson v. Sassower, 66 N.Y.2d 991, 993 (1985)), the Court is aware of no rule of law, and the parties have cited none, suggesting that an attorney is required to provide notice to a client as to every forum where the attorney might pursue a col-lection action. See Carey v. Mui-Hin Lau, 140 F. Supp.2d 291, 296 (S.D.N.Y. 2001) ("An attor-

ney has the burden of proving that the arrangement for compensation was fair and reasonable and fully comprehended by the client. However, under New York law, a private retainer agreement is viewed as presumptively fair in the absence of fraud, deceit, overreaching, or undue influence.") (citing Cohen v. Ryan, 311 N.Y.S.2d 644, 645 (App. Div., 2d Dep't, 1970)); see also Uy v. Bronx Mun. Hosp. Ctr., 182 F.2d 152 (2d Cir. 1999) (internal quotations omitted); Baye v. Grindlinger, 432 N.Y.S.2d 624, 625 (App. Div., 2d Dep't 1980).

If plaintiffs deposited substantial assets in foreign bank accounts, it is not surprising that a creditor would seek to collect on a debt in that forum. Additionally, the mere assertion that certain liens exist under New York law in the Retainer Agreement cannot be transformed into a blanket choice of forum clause in the event of a fee dispute.  Even if the quoted language is read to be a choice of law clause selecting New York law, such a clause would not prevent the defendants from filing a collection action in another jurisdiction.  Accordingly, summary judgment is granted on the second cause of action.

      *3.    Third Cause of Action*

In the third cause of action, plaintiffs allege that defendants over-billed for legal fees incurred during the time that the defendants represented the plaintiffs in 2009.  "Overbilling and padding of costs can constitute a breach of contract and give rise to a cause of action in favor of a client against an attorney."  See O'Connor v. Blodnick, Abramowitz & Blodnick, 744 N.Y.S.2d 205, 206 (App. Div., 2d Dep't 2002) (citing Graphic Offset Co. v. Torre, 433 N.Y.S.2d 13, 14 (App. Div., 1st Dep't 1980)).  Overbilling may also create a cause of action for breach of fiduciary duty.  See U.S. Ice Cream Corp. v. Bizar, 659 N.Y.S.2d 492, 493-94 (App. Div., 2d Dep't 1997) (finding allegation that attorney charged client fees so excessive that client forced to enter

into settlement with opposing party sufficient to raise cause of action for breach of fiduciary duty).

Defendants argue that to state a plausible claim for relief, plaintiffs must allege that they in fact overpaid for the services rendered.  But plaintiffs do allege that they paid $56,000.00 to the defendants (Am. Compl. ¶¶ 20-21) and that defendants' billing was excessive even with respect to the amount plaintiffs paid.  For example, plaintiffs allege that defendants billed for consultations conducted prior to their entering into the Retainer Agreement. (Am. Compl. ¶ 62).  Plaintiffs attach invoices from DVC corroborating that assertion.  (Singer Aff., Exs. A-J).  They also allege that work was assigned to Ellenzweig at $300 per hour that the parties had agreed should be assigned to an accountant with a lower hourly rate. (Galpern Aff.; Mem. in Opp. at 12).

The manner in which the defendants assigned work and the diligence with which it was completed are disputed.  The plaintiffs' amended complaint and supporting affidavits adequately allege facts that, taken in the light most favorable to them, establish that they overpaid for the services rendered.  In the alternative, defendants again argue that plaintiffs' allegations of excessive billing are refuted by the accord allegedly forged on October 14, 2009.  However, as stated before, the validity of the accord is contested based on the plaintiffs' claim of duress.  Accordingly, the Court will not grant summary judgment on the third case of action at this time.

### 4.     Fourth Cause of Action

The fourth cause of action alleges that defendants made fraudulent statements in pursuing their *in rem* action before the Swiss court.  Defendants argue that summary judgment is proper because plaintiffs failed to plead fraud with particularity. Defendants also contend that the undisputed facts show that the alleged statements were not fraudulent.

17

As a preliminary matter, the Court has its doubts that plaintiffs in the Galperns' position have a free-standing tort claim for damages against a defendant merely for procuring an allegedly fraudulent default judgment against them.  At most, it would seem that plaintiffs may seek to attack the validity of the foreign judgment.  See, e.g., Clarkson Co., Ltd. v. Shaheen, 544 F.2d 624, 630-31 (2d Cir. 1976).  And such a claim would require not simply the "mere assertion of the party that the judgment was erroneous in law or in fact" or "a mere assertion of fraud," but rather "[c]lear and convincing evidence of fraud."  Id. at 631.  The parties have not addressed this issue.  In any event, however, plaintiffs fail to state fraud with particularity as required by Fed. R. Civ. P. 9(b) and cannot establish the substantive elements of any cause of action for fraud, which thus entitles the defendants to judgment as a matter of law.

*A. Particularity*

Defendants first argue that plaintiffs failed to plead fraud with particularity.  "[In] all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  Thus, Fed. R. Civ. P. 9(b) requires that fraud claims be pleaded with a level of specificity beyond the usual "short and plain statement" standard of Fed. R. Civ. P. 8.  A complaint alleging fraud must:  "(a) specify the statements that the plaintiff contends were fraudulent; (b) identify the speaker; (c) state where and when the statements were made; and (d) explain why the statements were fraudulent." See Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Plaintiffs do not satisfy the second prong.[3]  The Second Circuit has held that the complaint must specifically "link[] the alleged fraudulent statements to particular [defendants];" thus,

---

[3] Defendants also argue that plaintiffs do not satisfy the requirements of the first and third prongs.  The Court disagrees.  Under Rule 9(b), "the 'mere gist' of the nature of the fraudulent statements is insufficient;" the complaint should allege "the precise

asserting in the complaint, as plaintiffs do in this case, that "defendants" made the statements is not sufficient to satisfy Rule 9(b).  Mills, 12 F.3d at 1175; DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1249 (2d Cir. 1987) (allegations of fraud were insufficient where the complaint did not link any of the defendants to the alleged fraudulent statement). In Mills, the Second Circuit further found that even if the plaintiff alleged that the company, one of the defendants, made the statements, it would not be specific enough to meet the particularity requirement against the company or its directors, the other named defendants. 12 F.3d at 1175 ("The mere fact that the Directors were controlling persons at Polar, [the company], does not link them to the statements; the plaintiffs also had to allege that the Directors personally knew of, or participated in, the fraud.").  Thus, the amended complaint does not properly plead the identity of the speaker in the fraud cause of action.

### B. Substantive Elements of Fraud

Even if the complaint is read to allege a particular speaker, defendants argue that summary judgment is proper because the alleged statement was not fraudulent.  To plead fraud under New York law, "a party must establish that a material misrepresentation, known to be false, has been made with the intention of inducing its reliance on the misstatement, which caused it to reasonably rely on the misrepresentation, as a result of which it sustained damages."  Nigro v. Lee, 882 N.Y.S. 2d 346, 348 (App. Div., 3d Dep't. 2009) (citing Cohen v. Colistra, 649 N.Y.S.2d 540 (1996)).

---

nature of the statements." Brown v. Royal Caribbean Cruises, Ltd., 2000 WL 34449703, at *4-5 (S.D.N.Y. 2000).  However, quoting the exact words of the alleged statements is unnecessary. Giuliano v.  Everything Yogurt, Inc., 819 F. Supp. 240, 244 (E.D.N.Y. 1993). Here, the amended complaint alleges the specific amount of money the defendants stated was owed to them by the plaintiffs to the Swiss court and the specific amount of money that was seized from their bank account as a result of the default judgment.

Plaintiffs also satisfy the third prong by adequately pleading when the statements were made. In Shaw v. Shaw, the Southern District found that a complaint alleging that statements were made "[i]n or around 1993," however "vague," was sufficient to satisfy the "when" requirement dictated by the Second Circuit. 356 F. Supp. 2d 383, 386 (S.D.N.Y. 2005). Here, the plaintiffs allege that the statements were made "on or about December 30, 2009."

Defendants argue that because plaintiffs agreed on October 14, 2009 to pay the $50,000.00 as part of the alleged accord and DVC subsequently performed services for which they billed $3,000.00, plaintiffs cannot show that a statement that defendants were owed such money was fraudulent. The Court agrees. Although the validity of the accord is now disputed, "a representation based on a good faith misinterpretation of the legal effect of an agreement does not provide a basis for a fraud claim." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (citing George Backer Mgmt. Corp. v. Acme Quilting Co., 46 N.Y.2d 211, 220 (1978)).

Plaintiffs allege in a conclusory fashion that defendants knew or should have known that their statement to the Swiss court was false; however, they acknowledge that they in fact agreed to pay the defendants that sum of money. There are no factual allegations supporting the claim that the defendants knowingly misrepresented the validity of the accord. Moreover, when a contract or agreement is made under economic duress it is voidable, not void *ab initio*. Universal, 1999 WL 771357, at *10 (citing Indus., 892 F. Supp. at 550). Plaintiffs did not file this action until March 2010 and did not claim duress until August 2010. There is no evidence in the record that they disputed the validity of the accord prior to that point. Accordingly, the Court finds that defendants' alleged statement to the Swiss court cannot have constituted a knowing misrepresentation at the time it was made. It therefore could not, as a matter of law, be fraud.

## II. Summary Judgment as to Defendants' Counterclaim and Affirmative Defenses

Plaintiffs move for summary judgment as to defendants' counter-claim and defendants' second, third, fourth, and seventh affirmative defenses. Defendants cross-move for summary judgment with respect to the counter-claim.

*1. Counterclaim*

Counterclaim-plaintiffs (Lloyd De Vos and De Vos & Co.) and counterclaim-defendants (the Galperns) both move for summary judgment as to the counterclaim, which alleges that De Vos & Co. are to be reimbursed for legal fees for the present action in accordance with the Retainer Agreement. The relevant portion of the Retainer Agreement reads:

> Should we be brought into any legal action involving you or any related company either as a witness or as a party, you agree to reimburse us for our fees and disbursements for the time and expenses we are required to expend or deem necessary to expend in connection with that matter as if these services were provided to you.

Counterclaim-plaintiffs argue that summary judgment is proper because of the clear import of this provision and because the provision was not modified by the October 14, 2009 accord. Counterclaim-defendants submit that summary judgment in their favor is proper because the provision is invalid under New York law.

In <u>Ween v. Dow</u>, 822 N.Y.S.2d 261 (App. Div., 1st Dep't 2006), the court held that a reimbursement provision in a retainer agreement between an attorney and his client in which the attorney would be reimbursed for fees incurred in a collection action brought against the client was invalid. <u>Id.</u> at 261-262. The court began by explaining that "with regard to attorney fee arrangements, the courts, as a matter of public policy, give particular scrutiny to the reasonableness of the fee arrangements between attorneys and clients pursuant to their interest in, and statutory power to, regulate the practice of law." <u>Id.</u> at 261. In upholding this policy, the court examined the provision at issue and determined that it was unlawful for two reasons. <u>Id.</u> at 261-262. First, it lacked mutuality because the clients were not afforded the same right to reimbursement as the attorneys if they brought an action against the attorney.[4] <u>Id.</u> Second, "[a]side from its lack of mu-

---

[4] The Court does not consider the validity of the clause in a situation where the attorney is sued by a third-party.

tuality, the clause, even if not so designed, has the distinct potential for silencing a client's com-
plaint about fees for fear of retaliation for the nonpayment of even unreasonable fees." Id. Up-
holding Ween as controlling in federal court, the Southern District of New York stated, "Ween
[i]s a per se bar on nonreciprocal fee provisions." In re Ernst, 382 B.R. 194, 198 (S.D.N.Y.
2008).

Counterclaim-plaintiffs argue that Ween's holding is limited to reimbursement agree-
ments in which the attorney grants himself the right to reimbursement in actions that the attorney
brings himself, whereas the provision at issue here affords the attorney reimbursement only in
those actions brought by the client or third parties in which the attorney becomes involved.
However, the provision nevertheless lacks mutuality by granting only the attorney the right to be
reimbursed and by not affording the client the same right should the client be brought into a sub-
sequent action and prevail. Second, although it is true that "fear of retaliation for the nonpayment
of even unreasonable fees" is not implicated by this particular provision, other deterrent effects
are.[5]  Indeed, for all it appears, the provision at issue in this case requires that a client pay a legal
fee *even if the client wins*. The provision thus deters even perfectly meritorious actions by offset-
ting the potential recovery by the costs of litigation.

Accordingly, the reimbursement provision of the Retainer Agreement is invalid as ap-
plied in this action.[6] The Court grants summary judgment for counterclaim-defendants as to the
counterclaim.

---

[5] Of course, that fear is implicated by the following provision in the retainer agreement, which is nearly identical to that rejected
in Ween.
[6] The Court is not entirely convinced that, despite its capacious language, this provision was meant to apply at all to fee disputes
between clients and attorneys.  Accordingly, the Court reiterates that its holding is limited to De Vos's attempt to invoke the pro-
vision in this particular action.

*2. Second Affirmative Defense*

Plaintiffs also move for summary judgment as to several of defendants' affirmative defenses. The second affirmative defense alleges that plaintiffs have failed to state a claim against DVC. Since the first and third causes of action state a claim for which relief may be granted, summary judgment is entered as to the second affirmative defense with respect to those causes of action.

*3. Third Affirmative Defense*

The third affirmative defense alleges that the plaintiffs failed to state a claim against De Vos as an individual. De Vos moved for summary judgment on this defense and the Galperns moved for summary judgment against it. De Vos is not a party to the retainer agreement. Plaintiffs argue that under NY LLC Law § 1205, since De Vos is a principal attorney, manager, shareholder and partner of DVC, he is "personally and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him" while rendering professional services on behalf of the professional limited liability company ("PLLC").

Although the statute does hold shareholders or officers personally liable for certain acts, the provision is "simply a reflection of the common law rule that a shareholder is liable for those torts of the corporation in which he is a participant." We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C., 103 A.D.2d 130, 132-36 (App. Div., 2d Dep't 1984). "[I]ndividual defendants are not liable for a breach of agreement made with the Corporation . . . ." Tannenbaum v. Rechenbaum & Silberstein, P.C., 642 N.Y.S.2d 43, 44 (App. Div. 1996); see also See San Diego Cty. Employees Retirement Ass'n v. Mauonis, 749 F. Supp. 2d 104, 128 (S.D.N.Y. 2010) ("Under New York law, an individual who signs a contract on behalf of a corporation, indicates her representative capacity on the contract, and exhibits no intention to assume personal liability for

the corporation's breaches is not subject to personal liability.") (quoting <u>Hudson Venture Part-</u><u>ners, LP v. Patriot Aviation Group, Inc.</u>, 1999 WL 76803, at *6 (S.D.N.Y. 1999)).  The Galperns therefore may not hold Lloyd De Vos personally liable for their first claim, which is based on breach of contract.  The first cause of action as asserted against Lloyd De Vos is dismissed.

The Galperns' other remaining claim is for over-billing. As noted above, over-billing claims have been held to sound in both breach of contract, <u>O'Connor v. Blodnick, Abramowitz</u><u>& Blodnick</u>, 744 N.Y.S.2d 205, 206 (App. Div., 2d Dep't 2002), and breach of fiduciary duty, <u>See</u> <u>U.S. Ice Cream Corp. v. Bizar</u>, 659 N.Y.S.2d 492, 493-94 (App. Div., 2d Dep't 1997).  Un-der New York law, breach of fiduciary duty is a tort. <u>Marino v. Grupo Mundial Tenedora, S.A.</u>, 2011 WL 1142887, *4 (S.D.N.Y. 2011).  The parties have not briefed whether § 1205 applies to over-billing claims sounding in breach of fiduciary duty.  Accordingly, the Court does not think it appropriate to dismiss the third cause of action against Lloyd De Vos at this time.

### 4. Fourth Affirmative Defense

Defendants' fourth affirmative defense argues that the plaintiffs failed to plead fraud with particularity. Pursuant to the analysis *supra* Section I.4 regarding the fourth cause of action, summary judgment for plaintiffs is denied.

### 5. Seventh Affirmative Defense

Defendants' seventh affirmative defense asserts that plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel due to the judgment rendered in Switzerland. Res judicata, or claim preclusion, bars relitigation of a claim "where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litiga-tion." <u>Amalgamated Sugar Co. v. NL Industries, Inc.</u>, 825 F.2d 634, 639 (2d Cir. 1987) (citing <u>In</u>

re Teltronics Services, Inc., 762 F.2d 185, 190 (2d Cir. 1985)).  Collateral estoppel bars litigants from relitigating any fact or issue that has been litigated and necessarily decided in a prior proceeding that produced a final judgment on the merits.  See Bank of New York v. First Millenium, Inc., 607 F.3d 905, 918 (2d Cir. 2010); Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455 (1985). The party seeking the benefit of collateral estoppel with respect to an issue must demonstrate that the issue decided in the prior proceeding is identical to the issue in the subsequent action, but the party resisting the application of collateral estoppel "has the burden of establishing the absence of a full and fair opportunity to litigate the issue."  Evans v. Ottimo, 469 F.3d 278, 281-82 (2d Cir. 2006) (internal quotation marks omitted).

The plaintiffs' motion is denied because this issue has not been sufficiently briefed for the Court to make a reasoned judgment. Here, the plaintiffs assert only that the Swiss court lacked jurisdiction based on the purported forum selection clause in the Retainer Agreement. As this Court decided above, however, the Retainer Agreement does not limit the forums in which either party may bring an action against the other. Whether the Swiss *in rem* default judgment has preclusive effect in this action is a complex legal question. Because the briefing on this issue is so scant, and because the Court has so few of the facts underlying the Swiss proceeding before it, the Court will not grant summary judgment as to seventh affirmative defense at this time.

### III.    Jury Demand

Defendants move to strike plaintiffs' jury demand of the amended complaint as untimely under Fed. R. Civ. P. 38(b). Plaintiffs submit that their amended complaint presented two new causes of action, changed the issues, and therefore revived their right to demand a jury.

Under Rule 38(b), a party may demand a jury "no later than 14 days after the last pleading directed to the issue is served." Id. "[F]ailure to demand a jury trial within the period desig-

nated by Rule 38(b) constitutes a waiver of that right as to all issues raised in the complaint." Lanza v. Drexel & Co., 479 F.2d 1277, 1310 (2d Cir. 1973) (en banc). In some instances, however, an amended pleading may revive the right to demand a jury. "Where… an amended pleading covers the same 'general area of dispute' as was covered in the original pleading, the filing of an amended complaint does not revive the right to demand a jury." Sea Carriers Corp. v. Empire Programs, Inc., 2007 WL 221521, at *1 (S.D.N.Y. 2007) (citing Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g, Inc., 75 F. Supp. 2d 242, 245 (S.D.N.Y. 1999)).

By contrast, an amended complaint may revive the right to a jury trial if it presents new "factual issues . . . [not] fully discussed in the original pleadings," or "new legal theories [not] based on facts previously pleaded." Swan Brewery Co. Ltd. v. U.S. Trust Co. of N.Y., 143 F.R.D. 40, 44 (S.D.N.Y. 1992) (citing Lanza, 479 F.2d at 1310; Rosen v. Dick, 639 F.2d 82, 94-96 (2d Cir. 1980); Royal Am. Mgrs., Inc. v. IRC Holding Corp., 885 F.2d 1011, 1018 (2d Cir. 1989).  Here, each of the new causes of action arises out of the same facts and circumstances, and to the extent new legal theories are asserted, they arises out of those same facts.  Accordingly, the jury demand is struck.

**CONCLUSION**

For the reasons stated, the Court denies summary judgment for De Vos & Co. with respect to the first and third causes of action; grants summary judgment in favor of De Vos & Co. and Lloyd De Vos with respect to the second and fourth causes of action; grants summary judgment in favor of Lloyd De Vos individually with respect to the first cause of action; denies summary judgment for Lloyd De Vos with respect to the third cause of action; grants summary judgment in favor of the Galperns with respect to the counter-claim; grants summary judgment on the second affirmative defense as it applies to the first and third causes of action; and strikes the Galperns' jury demand.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2011

_____/s/_____
Carol Bagley Amon
Chief United States District Judge
